# EXHIBIT A

Medical Protective
a Berkshire Hathaway company
Strength. Defense. Solutions. Since 1899.

Policy Number: C22756

Dear Customer:

We are honored that you have chosen Medical Protective to protect your reputation and assets. We pledge to provide you peace of mind, expertise and choice.

- **Peace of mind**: We want you to do what you do best – provide excellent patient care. Rest assured, with MedPro's century-long history and industry-leading A++ financial rating from A.M. Best, you can focus on providing excellent patient care – free from worry about your professional liability risk.

- **Expertise**: It matters in your field, and also in ours. MedPro has defended over 400,000 claims, is advised by 140 doctors on our Specialty Advisory Boards in the areas of claims, underwriting and patient safety, and has a risk management team that has provided expert guidance and protection since 1913. All that expertise now supports you.

- **Choice**: You should be able to choose a policy that will meet your every need. MedPro offers the strongest, broadest coverage options, for not only individual healthcare providers but also the most complex healthcare systems, giving you the control to do what is best for you.

Whatever your needs, MedPro will provide you with solutions that will last throughout your career. Enclosed you will find your Medical Protective policy. Should you have any questions regarding your coverage, please contact our Customer Service Team at 800-4MEDPRO (800-463-3776) or your independent agent. We look forward to serving you now and in the years ahead.

Sincerely,

The Medical Protective Customer Service Team

5814 Reed Road Fort Wayne, IN 46835 | 800-4MedPro | www.medpro.com

# THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA

(A STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY)

## *PARTNERSHIP - CORPORATION CONTRACT*

In Consideration *of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured,*

*A IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION DURING THE TERM OF THIS POLICY; EXCEPT this policy does not cover*

1 *any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of (a) any hospital, sanitarium, clinic with bed and board facilities or (b) any business enterprise, whether or not related to patient care and / or treatment;*

2 *payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act;*

3 *any liability of any corporation, partnership or association not named as an Insured in this policy;*

4 *any liability covered under a workmen's compensation, automobile, fire or general liability policy;*

5 *any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured.*

*B Upon receipt of notice the Company shall immediately assume its responsibility for the defense of any such claim. Such defense shall be maintained until final judgment in favor of the Insured shall have been obtained or until all remedies by appeal, writ of error or other legal proceedings deemed reasonable and appropriate by the Company shall have been exhausted at the Company's cost and without limit as to the amount expended. However, the Company shall not be obligated to defend any claim after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.*

*C The Company shall furnish a bond, not to exceed the stated amount for any one occurrence, required to appeal a judgment hereunder, but shall not be liable for more than a pro rata share of interest payments on appealed judgments.*

*D Except as respects the cost of defense provided under paragraph B and the premium on any bond furnished under paragraph C, the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage or (d) the number of policy years involved or (e) the imposition of prejudgment interest on any final adjudication against the insured the Company's total liability for damages including prejudgment interest shall not exceed the stated amount for any one occurrence and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate.*

*Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one occurrence:*

*a) all injury resulting from a series of acts or omissions in rendering professional services to one person and*

*b) all injury arising out of continuous or repeated exposure to substantially the same general conditions.*

*Upon the following conditions:*

*1 The Insured shall notify the Company, at its General Offices, Fort Wayne, Indiana, or its agent, as soon as possible, of any threatened claim, with full information relative to the services rendered; and in event such claim is filed in court shall immediately forward any and all summons or process served together with the original or a copy of any and all other papers relating to said claim.*

*2 The Insured shall not (a) make any hold harmless agreements or contract any expense nor voluntarily assume any liability in any situation nor (b) make or contract any settlement of a claim hereunder, except at his own cost and responsibility, without the written authorization of the Company. The Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim.*

*3 The Insured shall be authorized to practice its profession under the laws of the State or States in which it operates.*

*4 Other insurance—The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.*

*When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.*

*5 No action shall be maintained against the Company to recover a loss covered by this policy unless brought after the amount of such loss shall have been fixed either by a final judgment against the Insured by the court of last resort after trial of the issue or by agreement between the parties with the written consent of the Company and unless brought within two years and one day after such judgment or written agreement, except that, if such period is in conflict with the statutes of the state wherein this policy is issued, it is hereby amended to conform with such statutes. Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the Insured. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.*

*6 The interest of the Insured under this policy shall not be assignable to any other person.*

*7 This policy may be cancelled by the Insured by mailing to the Company or any of its authorized representatives, written notice, stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing, postage prepaid, to the Insured at the last address on record with the Company written notice stating when, not less than 30 days thereafter such cancellation shall be effective. If the Insured cancels, earned premium shall be computed in accordance with the standard short rate tables and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustments shall be made within a reasonable period of time after cancellation, but payment of or tender of such unearned premium shall not be a condition of cancellation.*

*8 By acceptance of this policy the Insured agrees that this policy embodies all agreements existing between itself and the Company or any of its agents relating to this insurance.*

*9 The following space is intended for waivers, exceptions and endorsements. If any, they shall become part of this policy.*

125 252 289 295 382 425 443 825 827 832 1196 7301 7401

**Insured's Profession:** MEDICINE
**The Insured:**

| | | |
|---|---|---|
| **Policy No.** | C22756 | PITTSBURGH GASTROENTEROLOGY ASSOCIATES |
| **The Premium $** | 17925 | LTD |
| SURCHARGE PA | 8480 | 2589 BOYCE PLAZA RD STE 5 |
| TOTAL | 26405 | PITTSBURGH PA 15241-4907 |

**One Occurrence $** 500,000 **Annual Aggregate $** 1,500,000

*The term of this policy shall begin and end at 12:01 a.m., standard time, at the place where the Insured resides*

| | MO. | DAY | YEAR | | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|
| **and be from** | 07 | 01 | 2025 | **to** | 07 | 01 | 2026 |

**In Witness Whereof,** *The Medical Protective Company has caused this policy to be signed by its President and its Secretary and countersigned by its duly authorized representative.*

Timothy J. Kenesey
PRESIDENT

Angela Adams
SECRETARY

Bradley W. Lloyd
COUNTERSIGNED
T-6-86-PC

IN THE EVENT OF CLAIM, THREATENED OR FILED, IMMEDIATELY NOTIFY THE MEDICAL PROTECTIVE COMPANY, FORT WAYNE, INDIANA

*FOR SERVICE CALL:* BRADLEY LLOYD @ 800-463-3776
RN

***In respect to condition 4, the first sentence is deleted and replaced by the following:***
***Other insurance: The insurance afforded by this policy is primary insurance, except when the insured has other valid and collectible insurance applicable to a loss covered by this policy, in which event this insurance shall be excess over such other valid and collectible insurance.***

***125*** ***Edt. 8/86***

*******************************************************************

### *CONDITION OF DUTIES UPON PAYMENT OF PREMIUM*

The following condition is added:

The Company's duty to perform under the policy is strictly conditioned upon the payment of the premium when due. Similarly, the Company's duty to renew the coverage provided under the policy shall be strictly conditioned upon the payment of the renewal premium by the date stated in the renewal premium notice. Therefore, this policy shall not be deemed to have been issued, delivered or renewed, and shall not be applicable to any matter which would otherwise be covered herein, until:

a. the premium has been paid in full; or
b. if the Company has agreed to finance the policy, the first installment has been paid in full.

However, if payment is made by check, electronic transfer or money order, it shall not be considered "paid in full" until honored by the payor's bank.

**252** **Edt. 9/02**

*******************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

# PENNSYLVANIA SECTION 715 ENDORSEMENT

The following exclusion is added to the policy:

Payment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to defend and pay damages pursuant to 40 P.S. §1303.715, as well as any amendments or extensions thereto.

The following sentence is added to Paragraph B:

Furthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. §1303.715, as well as any amendments or extensions thereto.

All other terms and conditions of the policy remain unchanged.



*******************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

# MEDICARE/MEDICAID BILLING ACTIONS
# LIMITED DEFENSE COVERAGE

It is hereby understood and agreed the Company's obligation to defend the Insured under the terms of the policy is broadened to include the defense of an Insured in an investigation, civil suit and/or administrative proceeding which is brought by a state or federal agency which alleges improper submission of claims for reimbursement under the Medicare or Medicaid program. However, the investigation, civil suit and/or administrative proceeding must arise from bills or requests for reimbursement for professional services rendered or which should have been rendered by the Insured or any other person for whose acts or omissions the Insured is legally responsible.

It is further agreed and understood this offer of a defense is provided under the following terms and conditions:

1. The Insured must first receive written notice of the investigation, suit and/or administrative proceeding during the term of this policy. The Insured must also report such notice to the Company, in writing, during the term of this policy.

2. The Company's offer of a defense shall not create any duty to pay any damages, fines, civil penalties or other remedies assessed against the Insured as a result of the investigation, suit and/or administrative proceeding unless such damages are otherwise payable under the policy.

3. The Company has no duty to defend the Insured against any criminal proceeding, including any indictment or criminal information, which charges an Insured with the violation of any state or federal penal statute.

4. The Company has no duty to defend the Insured from any allegations the Insured engaged in bribery or illegal threats to prevent the disclosure of the Insured's improper activities or attempts to entice another to conspire with the Insured to engage in such improper activities.

5. The Company will not pay more than $25,000 in defense costs for any single "incident" covered by this endorsement. In addition, the Company will not pay more than $100,000 in defense costs for all "incidents" which are reported to the Company during the term of this policy.

6. All related allegations of improper billing practices included in the same, similar or subsequent investigation, civil suit and/or administrative proceeding shall constitute a single "incident."

7. The Company shall have no duty to pay defense costs incurred by or for an attorney who was not retained or previously approved by the Company to defend the Insured.

8. As used in this endorsement, "defense costs" include reasonable attorney fees as well as other reasonable costs incurred by or at the direction of the attorney in the investigation and defense of the matter.

9. The Company has no duty to continue to pay defense costs after it becomes reasonably apparent to the Company that the Insured has engaged in fraudulent acts.

10. The Insured must immediately cease any improper practices as soon as they are discovered and agree to provide a refund to the third-party payor upon discovery of overpayment.

11. The Insured must have had a Medicare/Medicaid billing compliance program in place at the time the notice was first received by the Insured.

12. If this policy is issued on a claims made basis and the Insured purchases or is provided an "extension contract" upon the nonrenewal or cancellation of this policy, any claim covered under this endorsement which is first received by the Insured and reported to the Company in the first twelve months of the "extension contract" shall be deemed to have been made during the term of this policy.

The remaining terms and conditions of the policy remain unchanged.



*********************************************************************

*The second sentence of Condition 7 is amended to read as follows:*

> *The policy may be cancelled by the Company by mailing, first class postage prepaid, to the Insured at the last address on record with the Company, written notice, within 60 days after the issuance of the policy, labeled "Notice of Cancellation" stating the specific reasons and stating when, not less than 60 days thereafter such cancellation shall be effective, and the policy may be nonrenewed by the Company by mailing, first class postage prepaid, to the Insured at the last address on record with the Company, written notice labeled "Notice of Nonrenewal" stating the specific reasons and stating when, not less than 60 days thereafter such nonrenewal shall be effective.*

***382***

*****************************************************************

*The first paragraph of Paragraph D is deleted and the following is added:*

> *D. Except as respects the cost of defense provided under paragraph B and the premium on any bond furnished under paragraph C, the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage, or (d) the number of policy years involved, the Company's liability for damages shall not exceed the stated amount for any one occurrence and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate.*

***425***

*****************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## *PRODUCT LIABILITY EXCLUSION ENDORSEMENT*

The following exclusion is added:

any liability arising from a defective good or product invented, designed, manufactured, or sold by the Insured or any Additional Insured. However, this exclusion shall not apply to liability arising from a good or product which was specifically used by the Insured to provide professional services to the Insured's own patient.

**443** **Edt. 12/02**

*******************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## *REPRESENTATION ENDORSEMENT*

It is hereby agreed and understood that Condition 8 of the policy is hereby deleted and replaced with the following:

By acceptance of this policy, the Insured agrees the statements in any application (new and renewal) submitted to the Company are true and correct. In the event an application was executed or endorsed by the Insured's agent, the Insured acknowledges that the agent has acted under the Insured's express authority and that the Insured has thoroughly reviewed the information contained on the application. Therefore, it is understood and agreed that, to the extent permitted by law, the Company reserves the right to rescind this policy, or any coverage provided herein, for any material misrepresentation made by the Insured.

The representations made by the Insured in the applications are the basis for the coverage provided, as well as the Company's calculation of the applicable premium. As a result, the Insured agrees to inform the Company of any changes to his or her practice. Such material changes shall include, but are not limited to:

a. a specialty, procedure performed, or training;
b. a practice location;
c. an employer;
d. a significant change in the number of working hours;
e. the revocation, suspension, or restriction of the Insured's professional license, hospital privileges, or DEA license;
f. any criminal indictment;
g. any settlement or verdict in a lawsuit that was not defended by the Company; or
h. any condition that impairs the ability to practice the Insured's specialty,

that were not included on the Insured's most recent application (new or renewal).

In the event the Company is made aware of a material change in the Insured's practice, it reserves the right to recalculate the applicable premium and/or exclude the new practice characteristics from coverage.

It is understood and agreed that the statements made in the Insured's application are incorporated into, and shall form a part of, this policy. Therefore, this policy, any endorsements attached thereto, and the applications embody all agreements between the Insured and the Company, or any of its authorized representatives, relating to this insurance.

All other terms and conditions of the policy remain unchanged.

**E 825** **Edt. 02/2006**

*********************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

**ENDORSEMENT TO REVISE PARAGRAPHS A and B**
**(PARTNERSHIP-CORPORATION / OCCURRENCE)**

The following provisions of Paragraph A are hereby deleted:

In consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured,

A. IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION DURING THE TERM OF THIS POLICY;

These provisions are replaced with the following:

In consideration of the payment of the premium and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured,

A. In any claim based upon professional services rendered, or which should have been rendered, during the term of this policy by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.

The following definitions shall apply throughout the policy:

1. The word "claim" shall mean an express written demand for money as compensation for civil damages.

2. The phrase "professional services" shall only include the following:
   (a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider. This shall include first aid rendered at the scene of an accident without expectation of monetary compensation.

   (b) the credentialing of a health care provider, including the review of the provider's fitness and qualification to provide health care services by a professional review board or committee through formally adopted, written procedures.

3. The phrase "the term of this policy" shall mean the period of time referred to on the declarations at the end of this policy form in the sentence which begins, "The term of this policy shall begin and end…" However, the term of this policy may be modified by endorsement upon proper notification to, or from, the Insured.

Paragraph B of the policy is hereby deleted and replaced with the following:

B. Upon receipt of written notice of a claim covered under the terms and conditions of this policy, the Company shall immediately assume its responsibility for the defense of the claim. The Company shall maintain its defense of a covered claim until final judgment is rendered, or until any appeal, writ of error, or other post-verdict proceeding deemed reasonable and appropriate by the Company is exhausted. The Company shall provide a defense without limit as to the amount expended. However, the Company shall not be obligated to defend any claim after the applicable limit of this policy has been exhausted by the payment of damages resulting from a judgment or settlement.

The following provision from Paragraph D is hereby deleted:

Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one occurrence:

(a) all injury resulting from a series of acts or omissions in rendering professional services to one person and
(b) all injury arising out of continuous or repeated exposure to substantially the same conditions.

The following provision is added to Paragraph D:

Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one occurrence:

(a) All injury resulting from a series of acts or omissions in rendering professional services to one person. For the purposes of this section, all injuries to a mother and fetus (or fetuses) from conception through delivery shall constitute one occurrence.
(b) All injury arising out of continuous or repeated exposure to substantially the same conditions.

All other terms and conditions remain unchanged.

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## *AMENDMENT TO BUSINESS ENTERPRISE EXCLUSION PARTNERSHIP-CORPORATION POLICY*

The following exclusion is hereby deleted:

> any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of (a) any hospital, sanitarium, clinic with bed and board facilities or (b) any business enterprise, whether or not related to patient care and/or treatment.

The following exclusion is hereby added:

> any liability arising from an Insured's ownership, operation, or supervision of any hospital, sanitarium, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization, or other professional or business enterprise not listed as an Insured or Additional Insured under this policy.



*****************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

**LIMITED PUNITIVE DAMAGES COVERAGE ENDORSEMENT**

It is hereby agreed and understood that the following exclusion:

> any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured

shall not apply to a claim for damages brought against the Insured as a result of professional services rendered in an "exempted state." However, the following exclusion shall be substituted for professional services rendered in the State of Oklahoma:

> any punitive damages or damages over and above actual compensatory damages; except that this exclusion will not apply to the Insured's vicarious liability for punitive damages as a result of the acts or omissions of a person for whom the Insured is legally responsible unless the Insured was grossly negligent.

Exempted State(s): *Alabama, Arizona, Arkansas, Georgia, Kentucky, Louisiana, North Carolina, Oregon, South Carolina, Tennessee, Virginia*

All other terms and conditions of the policy remain unchanged.



*********************************************************************

THE MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## *DECLARATIONS*
## *CYBER LIABILITY AND DATA BREACH COVERAGE ENDORSEMENT*
*(CORPORATION)*

Effective Date: 07/01/2025

Expiration Date: 07/01/2026

Per Claim Retention: $0

Per Claim and First Party Limits of Liability:

| | | |
|---|---|---|
| A. Enterprise Security Event and Privacy Injury Liability | $50,000 | total **damages** per **claim** |
| B. Privacy Regulation Liability | $50,000 | total **regulatory loss** per **claim** |
| C. PCI-DSS Assessments | $50,000 | total **damages** per **claim** |
| D. Crisis Management Expense | $50,000 | total expenses |
| E. Fraud Response Expense | $50,000 | total expenses |
| F. Public Relations Expense | $50,000 | total expenses |
| G. Forensic and Legal Expenses | $50,000 | total expenses |
| H. Computer Systems Extortion Loss | $50,000 | total **extortion loss** |
| I. Data Recovery Expense | $50,000 | total expenses |

Entity Annual Aggregate Limits of Liability*:

| | |
|---|---|
| 1 Provider | $50,000 |
| 2 – 10 Providers | $200,000 |
| 11 – 20 Providers | $350,000 |
| 21+ Providers | $500,000 |

| | |
|---|---|
| Additional Premium: | $0 |
| Additional Surcharge: | $0 |
| Additional Taxes: | $0 |
| Total Coverage Premium: | $0 |

* The Entity Annual Aggregate Limit of Liability is based upon the number of providers (physicians/dentists) affiliated with an **insured entity** as of the Effective Date.

*************************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

# *CYBER LIABILITY AND DATA BREACH COVERAGE ENDORSEMENT PARTNERSHIP-CORPORATION POLICY*

**NOTICE:**

**SOLELY AS RESPECTS CLAIMS-MADE LIABILITY COVERAGES UNDER THIS ENDORSEMENT, THIS ENDORSEMENT PROVIDES COVERAGE ON A CLAIMS-MADE BASIS AND APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY AS SET FORTH IN THE SECTION ENTITLED REPORTING OF CLAIMS AND EVENTS.**

**WITH RESPECT TO ANY LIABILITY COVERAGE, CLAIM EXPENSES ARE INCLUDED IN THE LIMITS OF LIABILITY, AND PAYMENT THEREOF WILL ERODE, AND MAY EXHAUST, THE AGGREGATE LIMIT OF LIABILITY AND ANY OTHER LIMIT OF LIABILITY APPLICABLE TO ANY CLAIMS.**

**LIMITS PROVIDED BY THIS ENDORSEMENT ARE IN ADDITION TO AND DO NOT ERODE THE POLICY LIMITS OF LIABILITY APPLICABLE TO ANY OTHER ENDORSEMENT.**

**THIS ENDORSEMENT IS A STAND-ALONE ENDORSEMENT, EXPRESSLY SUBJECT TO ITS OWN TERMS, CONDITIONS, DEFINITIONS AND EXCLUSIONS AND OTHER PROVISIONS AS SET FORTH BELOW. WHILE ATTACHED TO, AND MADE A PART OF THE POLICY, THIS ENDORSEMENT IS NOT SUBJECT TO THE SAME TERMS, CONDITIONS, DEFINITIONS OR EXCLUSIONS OF THAT POLICY OR OTHER ENDORSEMENTS ATTACHED THERETO, EXCEPT WITH REGARD TO THE POLICY PROVISIONS SETTING OUT THE TERMS OF THE EXTENDED REPORTING PERIOD, AS WELL AS ANY CANCELLATION, RENEWAL AND STATUTORY NOTIFICATION REQUIREMENTS.**

**READ THE ENTIRE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED, AND DISCUSS, AS NEEDED, WITH YOUR INSURANCE PRODUCER.**

In consideration of the payment of the premium due, and in reliance upon the representations of all **Insureds**, the **Company** and the **Insureds** agree as follows, subject to the terms and conditions of this policy, including the applicable limits of liability.

I. *INSURING CLAUSE– CLAIMS-MADE LIABILITY COVERAGES*

The following coverages are added to the policy:

A. Enterprise Security Event and Privacy Injury Liability Coverage.

The **Company** will pay those **damages** within the applicable limit of liability, and in excess of any applicable retention, that the **Insured** becomes legally obligated to pay because of an **enterprise security event or privacy injury claim** or a **PCI-DSS claim**, provided that:

1. such **claim** is first made against the **Insured** during the **policy period** or any applicable **extended reporting period** and is reported to the **Company** in accordance with section entitled Reporting of Claims and Events;
2. the **enterprise security event** or **privacy injury**, as applicable, giving rise to the **claim** is reported to the **Company** in accordance with section entitled Reporting of Claims and Events; and,

3. as of the **first inception date**, no **control group insured**:
   a. had given notice to any insurer of any:
      (1) **related claim**; or,
      (2) act, error, omission, fact or circumstance, including any **related enterprise security event** or **related privacy injury** reasonably likely to give rise to an **enterprise security event or privacy injury claim**; or,
   b. knew, or had a basis to believe, that any:
      (1) **related claim** had been made; or,
      (2) act, error, omission, fact or circumstance, including any **related enterprise security event** or **related privacy injury**, as applicable, was reasonably likely to give rise to a **claim**.

The **Company** will also pay all **claim expenses** in connection with such **claim**. **Claim expenses** are included within and erode the applicable limits of liability.

B. *Privacy Regulation Liability Coverage.*
The **Company** will pay that **regulatory loss** within the applicable limit of liability that an **Insured** becomes legally obligated to pay because of a **privacy regulation claim** alleging such **Insured** or others for whom such **Insured** is legally liable violated a **privacy regulation**, provided that:
1. such **privacy regulation claim** is first made against the **Insured** during the **policy period** or any applicable **extended reporting period** and is reported to the **Company** in accordance with section entitled Reporting of Claims and Events;
2. the **enterprise security event** or **privacy injury** giving rise to the **privacy regulation claim** is reported to the **Company** in accordance with section entitled Reporting of Claims and Events; and,
3. as of the **first inception date**, no **control group insured**:
   a. had given notice to any insurer of any **related privacy regulation claim** or of any **related violation** reasonably likely to give rise to a **privacy regulation claim**; or,
   b. knew, or had a basis to believe, that any **related privacy regulation claim** had been made or that any **related violation** was reasonably likely to give rise to a **privacy regulation claim**.

The **Company** will also pay all covered **claim expenses** in connection with any such **claim**. **Claim expenses** are included within and erode the applicable limits of liability.

*II. INSURING CLAUSE – FIRST PARTY COVERAGES*
The following coverages are added to the policy:

A. *Crisis Management and Fraud Prevention Expense Coverages.*
The **Company** will pay the **Insured** for:
1. **crisis management expense**;
2. **fraud response expense**;
3. **public relations expense**; or,
4. **forensic and legal expense**,

incurred because of an **enterprise security event** or **privacy injury** within the applicable limits of liability.

B. *Computer System Extortion Coverage.*
The **Company** will pay the **Insured** for **extortion loss** incurred because of an **extortion threat** within the applicable limits of liability.

C. *Data Recovery Expense Coverage.*
The **Company** will pay the **Insured** for **data recovery expense** within the applicable limits of liability it incurs because of a **system disruption**.

It is a condition precedent to coverage under the First Party Coverages that:

1. the **Insured** notifies the **Company** of the **enterprise security event**, **privacy injury**, **extortion threat**, or **system disruption** in accordance with the section entitled Reporting of Claims and Events;
2. the **enterprise security event**, **privacy injury**, **extortion threat**, or **system disruption** first occurs on or after the effective date of this Endorsement and prior to the termination date of this Endorsement; and,
3. as of the effective date of this Endorsement no **control group insured**:
   a. had given notice to any insurer of any **related enterprise security event**, **related privacy injury**, **related extortion threat**, **related system disruption**, or any fact or circumstance that was reasonably likely to give rise to an **enterprise security event**, **privacy injury**, **extortion threat**, or **system disruption**, including a threatened or actual **cyber attack**; or,
   b. knew or had a basis to know that a **related enterprise security event**, **related privacy injury**, **related extortion threat**, **related system disruption** had occurred, or of any fact or circumstance that was reasonably likely to give rise to an **enterprise security event**, **privacy injury**, **extortion threat**, or **system disruption**, including a threatened or actual **cyber attack**.

*III. WHO IS INSURED*

For the purposes of this Endorsement, an **Insured** is:

A. an **insured entity**;
B. an **insured provider**; or,
C. an **individual insured**.

*IV. SUPPLEMENTAL PAYMENTS*

*Breach Preparedness Information Services.*

The **Company** will provide **breach preparedness information services** to an **insured entity** or an **insured provider** during the **policy period**, even if an **enterprise security event** has not yet occurred. This supplementary service will be provided to the **insured entity** or to the **insured provider** without premium or fee.

*V. LIMITS OF LIABILITY, RETENTION AND REIMBURSEMENT*

Solely as respects the coverages added by this Endorsement, the following provisions shall control:

A. *Limits of Liability.*
   1. *Entity Aggregate Endorsement Limits of Liability*
      The Entity Annual Aggregate Limits of Liability stated on the Declarations of the Cyber Liability and Data Breach Coverage Endorsement is the most the **Company** will pay for all amounts covered under this Endorsement, regardless of the number of **Insureds**, **claims**, **enterprise security events**, **privacy injuries**, violations of **privacy regulations**, **extortion threats**, or **system disruptions**.
   2. *Per Claim Limits of Liability – Enterprise Security Event and Privacy Injury Liability, Privacy Regulation Liability and PCI-DSS Assessments*
      Subject to the Entity Annual Aggregate Limits of Liability, the Per Claim **enterprise security event or privacy injury claim** Limits of Liability and Per Claim **privacy regulation claim** Limits of Liability set forth on the Declarations of the Cyber Liability and Data Breach Coverage Endorsement is the most the **Company** will pay for all covered **damages** or **regulatory loss** and **claim expenses** in connection with each such **claim**, as applicable.
      However, as respects a **PCI-DSS claim**, the Per Claim **PCI-DSS claim** Limits of Liability as specified in the Declarations of the Cyber Liability and Data Breach Coverage Endorsement is the most the **Company** will pay for covered **damages** and **claim expenses** for each **PCI-**

**DSS claim**, subject to the Aggregate Endorsement Limits of Liability and the Per Claim **enterprise security event or privacy injury claim** Limits of Liability.

The Per Claim Limits of Liability provided under this provision are shared with all **Insureds**.

3. *Per First Party Coverages Limits of Liability*
Subject to the Entity Annual Aggregate Limits of Liability, the applicable **crisis management expense**, **fraud response expense**, **public relations expense**, **forensic and legal expense**, **extortion loss** and **data recovery expense** Limits of Liability set forth on the Declarations of the Cyber Liability and Data Breach Coverage Endorsement is the most the **Company** will pay for each such covered expenses.

The Per First Party Coverages Limits of Liability under this provision are shared with all **Insureds**.

4. *Stacking of **Insured Provider** and **Insured Entity** Limits of Liability*
The separate Per Claim, First Party and Aggregate Limits of Liability available to an **insured provider** under any separate Cyber Liability and Data Breach Coverage Endorsements issued by the **Company** under a separate policy are separate from, and do not erode, the Limits of Liability available to the **insured provider** as an **Insured** under this Endorsement.

B. *Retentions.*
1. *Claims-Made Liability Coverage Retentions*
The Per Claim Retention set forth on the Declarations of the Cyber Liability and Data Breach Coverage Endorsement will apply to each covered **claim**.
2. *First Party Coverages Retentions*
The Per Claim Retention set forth on the Declarations of the Cyber Liability and Data Breach Coverage Endorsement is the most the **Insured** will be required to pay under the policy for such covered expense, regardless of the number of **enterprise security events**, **privacy injuries**, **extortion threats**, or **system disruptions**.

C. *Reimbursement.*
Unless prohibited by law, if the **Company** has paid any amounts in excess of any applicable Limits of Liability, or amounts paid in connection with **claims**, **enterprise security events**, **privacy injuries**, **extortion threats**, or **system disruptions** for which this policy does not afford coverage, the **Company** will have the right to seek recovery from the **first named insured** for any such amounts.

*VI. DEFENSE AND SETTLEMENT OF CLAIMS*
Solely as respects the coverages added by this Endorsement, the following provisions shall apply:

A. The **Company** will have the right and duty to defend a covered **enterprise security event or privacy injury claim**, a **PCI-DSS claim** or a **privacy regulation claim**, even if the allegations are groundless, false or fraudulent.

B. The **Company** will have the right to appoint counsel on the **Insured's** behalf and to investigate and settle a covered **enterprise security event or privacy injury claim**, a **PCI-DSS claim** or a **privacy regulation claim** as is deemed necessary by the **Company**. However, the **Company** will not settle an **enterprise security event or privacy injury claim**, a **PCI-DSS claim** or a **privacy regulation claim** without the **Insured's** consent, such consent not to be unreasonably withheld.

C. The **Company's** right and duty to defend or pay **Insureds** ends when the applicable limit of liability has been exhausted.

*VII. EXCLUSIONS*

Solely as respects the coverages added by this Endorsement, the following exclusions shall control:

A. *Exclusions Applicable to All Coverages.*

This Endorsement does not provide coverage for **claims** or for any amounts:

1. *Bodily Injury or Property Damage*

based upon or arising out of:

a. **bodily injury** except that this exclusion does not apply to mental injury or mental anguish if directly resulting from an **enterprise security event** or **privacy injury**; or,

b. **property damage**.

2. *Contractual Liability*

for, based upon or arising out of any breach of contract, representation, warranty or guarantee; provided, however, this exclusion does not apply to **claims**:

a. based upon the **Insured's** liability that would have attached in the absence of such contract or agreement; or,

b. for an **Insured's** breach of an obligation to maintain the security or confidentiality of **protected data**.

3. *Discrimination*

based upon or arising out of harassment or discrimination, including but not limited to harassment or discrimination because of or relating to race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation or marital status.

4. *Economic Sanctions Exclusion*

whenever coverage provided by this policy would be in violation of any U.S. economic trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control, such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any **claim** or potential claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

5. *Employment*

based upon or arising out of any employment or employment-related matters.

6. *False Claims Act*

based upon or arising out of the False Claims Act, or any similar federal or state law, rule or regulation concerning billing errors or fraudulent billing practices or abuse.

7. *Fraudulent or Intentional Misconduct*

based upon or arising out of any act, error or omission that is dishonest, fraudulent, criminal, malicious or intentionally committed by an **Insured** while knowing it was wrongful or unauthorized. However, the **Company** will provide a defense and pay **claim expenses** unless or until such conduct is evidenced by any judgment, final adjudication, alternate dispute resolution proceeding, or by admission by the **Insured**.

This exclusion applies only to any **Insured** who is found to have committed such conduct by any trial verdict, court ruling, or regulatory ruling.

For the purpose of applying this exclusion the acts, errors or omissions of any **Insured** will not be imputed to any other **Insured**.

8. *Governmental Actions*

made by any federal, state or local governmental entity, or that are based upon actions, decisions, orders, or proceedings by any federal, state or local governmental entity, including the Federal Trade Commission or Federal Communications Commission; however, this exclusion shall not apply to any otherwise covered **privacy regulation claim**.

9. *Insured versus Insured*
made by, on behalf of or for the benefit of any **Insured**; provided, however this exclusion shall not apply to an otherwise covered **claim** by an **Insured** alleging the disclosure of **protected personal information**.
10. *Intellectual Property*
based upon or arising out of actual or alleged infringement, contributory infringement, misappropriation or theft of any intellectual property rights, including, but not limited to patent, copyright or trademark, service mark, trade dress, trade secret or trade slogan; except, however, this exclusion does not apply to **enterprise security event or privacy injury claims** alleging misappropriation or theft of trade secrets in **corporate information**.
11. *Owned Entity*
made by, on behalf of or for the benefit of any entity that is a parent of the **insured entity**, joint venture or co-venture of any **Insured**, or other entity in which any **Insured** is a partner, and including any entity directly or indirectly controlled, operated or managed by such an entity.
12. *Pension and Retirement Fund Related Acts*
based upon or arising out of acts of the **Insured** related to any **insured entity's** or **insured provider's** pension, healthcare, welfare, profit sharing, mutual or investments plans, funds or trusts; or any violation of any provisions of the Employee Retirement Income Security Act of 1974 and any amendments thereof, or regulations, rulings or orders issued pursuant thereto.
13. *Pollution*
based upon or arising out of:
    a. any nuclear reaction, radiation, or contamination;
    b. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal, or disposal of **pollutants** anywhere or anytime or the creation of any injurious condition involving **pollutants**; or,
    c. any direction, request, demand or order that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**;

    whether or not the events described in a, b, or c above were sudden, accidental, gradual, intended, expected or preventable, and whether or not any **Insured** caused or contributed to such event.
14. *Securities Law Violations*
based upon or arising out of any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, any state blue sky or securities law, any similar state or federal law, or any amendment to the above laws or any violation of any order, ruling or regulation issued pursuant to the above laws; except that this exclusion does not apply to a **privacy regulation claim**.
15. *Specified Claims and Other Amounts*
that are covered in whole or in part under a General Liability or Commercial General Liability policy.
16. *Unlawful Gathering of Information*
based upon or arising out of the **Insured's** unlawful or unauthorized collection, acquisition or use of personal information, or the failure to comply with legal requirements or obligations relating to a person's consent to the acquisition, collection, or use of personal information; except, however, this exclusion does not apply with respect to a **privacy regulation claim**.
17. *War*
based upon or arising out of war, invasion, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, or the confiscation, nationalization or destruction of, or damage to, property under the order of government or other public authority.

B. *Exclusions Applicable to Computer System Extortion Coverage.*
In addition to the exclusions set forth in the Exclusions Applicable to All Coverages section, the Computer System Extortion Coverage shall not apply to cover any amounts in connection with an **extortion threat** made by:
1. any entity which is a parent, affiliate, joint venture or co-venture of any **Insured** that is an entity, or other entity in which any **Insured** is a partner, including any individual who is an employee, officer or director thereof;
2. any entity directly or indirectly controlled, operated or managed by an entity described in B.1., above, including any individual who is an employee, officer or director thereof; or,
3. any **Insured** that is an entity.

C. *Exclusions Applicable to Data Recovery Expense Coverage.*
In addition to the exclusions set forth in the Exclusions Applicable to All Coverages section, Data Recovery Expense Coverage shall not apply to any **data recovery expense** or **system disruption** arising out of government-ordered seizure or destruction, seizure, confiscation, nationalization, or destruction of information or the **computer system** by order of any governmental or public authority. As used in this exclusion, information means electronic data, including software, stored on the **computer system** at the time of the **system disruption**, provided that such data is subject to the **insured entity's** regular backup procedures. As used in this exclusion, information does not mean digital currency records or any data concerning electronic fund transfers, digital currency, or transactions.

*VIII. DEFINITIONS*
Whenever used herein:

A. **Breach preparedness information service** means data breach risk mitigation information accessed through the www.medpro.com website.

B. **Bodily injury** means physical injury to the body, or sickness or disease sustained by a person, including death resulting therefrom. **Bodily injury** includes mental injury or mental anguish, including emotional distress, shock or fright, whether or not resulting from injury to the body, sickness, disease or death of any person.

C. **Claim** means an **enterprise security event or privacy injury claim**, **PCI-DSS claim** or a **privacy regulation claim**, as applicable.

D. **Claim expenses** means reasonable and necessary expenses incurred in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **claims**, whether paid by the **Company** or by the **Insured** with the **Company's** consent. **Claim expenses** includes:
1. attorneys' fees incurred by the **Company** or by the **Insured** with the **Company's** consent;
2. court costs taxed against an **Insured**. However, this does not include attorneys' fees or attorneys' expenses taxed against the **Insured**;
3. the cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of liability. The **Company** does not have to furnish these bonds; or,
4. expenses incurred by an **Insured** at the **Company's** request, excluding:
   a. loss of earnings; or,
   b. salaries, benefits, or other compensation paid to any **Insured**.

E. **Company** means the insurance company listed in the Declarations of the policy.

F. **Computer system** means computer hardware, software and all components thereof linked together through a network of devices accessible through the internet or the **insured entity's** or **insured provider's** intranet or connected with data storage or other peripheral devices and operated by and either owned by or leased to an **insured entity** or **insured provider** or operated for the benefit of an **insured entity** or **insured provider** by a third party service provider and used for the purpose of providing hosted application services to an **insured entity**; or for processing, maintaining, or storing electronic data, pursuant to written contract or agreement with an **insured entity** or **insured provider**.

G. **Consumer redress fund** means those sums the **Insured** is legally obligated to deposit in a fund as an equitable remedy for the payment of consumer claims resulting from an adverse judgment, ruling, or settlement of a **privacy regulation claim**.

H. **Control group insured** means:
  1. with respect to an **insured entity** or **individual insured**, the **insured entity's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, chief technology officer, chief information officer, chief privacy officer, chief security officer, risk manager or general counsel, or their functional equivalents, and the non-administrative personnel of the offices thereof; or,
  2. with respect to an **insured provider**, that **insured provider**.

I. **Corporate information** means any information owned by a third party and in an **insured entity's** or **insured provider's** care, custody, or control and that the **insured entity** or the **insured provider** is legally required to maintain in confidence. However, **corporate information** does not include **protected personal information** and does not mean publicly available information that is lawfully in the public domain or information available to the general public from government records.

J. **Crisis management expense** means the following reasonable costs of those services incurred by or on behalf of an **insured entity** or an **insured provider** as set forth in paragraphs 1 through 3 below, in excess of the **insured entity's** or **insured provider's** normal operating costs and with the prior written approval of the **Company**:
  1. preparation, distribution and/or transmission of notices of the **enterprise security event** or **privacy injury** by reasonable means for the purpose of advising those persons whose **protected personal information** may have been improperly accessed, lost or stolen regardless of whether such notice is mandated by law or regulations, provided that such costs are incurred by an **insured entity** or an **insured provider** to mitigate financial, reputational or other harm in connection with an **enterprise security event** or **privacy injury**;
  2. call center services to answer questions from persons receiving notice in accordance with paragraph VIII.J.1. above; or,
  3. design and implementation of a website for advising of any purported access, loss of or theft of **protected personal information**.

  Provided, however, **crisis management expense** does not mean and does not include **fraud response expense**, **public relations expense**, **forensic and legal expense** or **data recovery expense**.

K. **Cyber attack** means the intentional and targeted release or insertion by a person or entity other than an **Insured** of any computer virus, malware, Trojan horse, worm, or other code, script, or software into the **computer system** for the purpose of gaining or enabling unauthorized access to the **computer system**.

L. **Damages** means:

1. As respects an **enterprise security event or privacy injury claim**, a monetary judgment, award or settlement, including pre-judgment interest, and amounts that are actual, statutory, punitive, multiplied or exemplary, if permitted by law in an applicable jurisdiction, including attorneys' fees and attorneys' expense included as part of a judgment, award or settlement. **Damages** also includes interest on any part of a judgment not exceeding the applicable limits of liability that accrues after the entry of the judgment and before the **Company** has paid or tendered or deposited the applicable judgment amount in court.

   However, as respects an **enterprise security event or privacy injury claim**, **damages** does not include:

   a. fines or penalties, taxes, loss of tax benefits, or sanctions assessed against any **Insured**;
   b. costs to comply with orders granting non-monetary or injunctive relief;
   c. royalties, return or offset of royalties, fees, deposits, commissions or charges or any award, calculation or determination of damages based on royalties, licensing fees or profits;
   d. any amounts attributable to loss of, theft of or the fluctuation in the value of, monies or securities;
   e. disgorgement of unjust enrichment or profits;
   f. liquidated damages to the extent such liquidated damages exceed the amount for which the **Insured** would have been liable in the absence of such liquidated damages agreement;
   g. any amounts for which the **Insured** is not liable or for which there is no legal recourse against the **Insured**;
   h. any amounts deemed uninsurable under the law pursuant to which this Endorsement is construed; or,
   i. any amounts, for which an **Insured** is liable based on or arising out of any **payment card industry agreement**.

   In determining the insurability of punitive or exemplary damages, or the multiplied portion of any multiplied damage award, the law of the jurisdiction most favorable to the insurability of those damages will apply. If an **insured entity** or an **insured provider** reasonably determines that punitive or exemplary damages are insurable, the **Company** will not challenge that determination.

2. As respects a **PCI-DSS claim**, **damages** means **PCI-DSS assessments**. It is a condition precedent to coverage for such **PCI-DSS assessments** that the **insured entity** or **insured provider** must have accurately validated, not more than twelve (12) months prior to the occurrence of the **enterprise security event** or **privacy injury** giving rise to the **claim**, to the applicable credit/debit card company that it was in compliance with the **payment card industry agreement's** data security standards.

M. **Data recovery expense** means all reasonable and necessary sums incurred by an **insured entity** or **insured provider**, with our prior written consent, to recover and/or replace data within the care, custody or control of an **Insured** that is compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **system disruption**, including but not limited to the costs associated with the repair or replacement of any software that is compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **system disruption**. **Data recovery expenses** shall not include:

1. the costs of repairing or replacing any hardware, equipment or wiring;
2. wages, salaries or other compensation or income of any **individual insured** or **insured provider**; or,
3. the costs of recovering or replacing data for or on behalf of any third party.

N. **Enterprise security event** means any of the following:
   1. alteration, corruption, destruction, deletion or damage to data stored on the **computer system**;
   2. transmitting or receiving **malicious code** via the **computer system**; or,
   3. unauthorized access to or unauthorized use of the **computer system** that directly results in denial or disruption of access of authorized parties.

O. **Enterprise security event or privacy injury claim** means a written demand for monetary or non-monetary relief, or a civil proceeding, arbitration or any alternative dispute resolution proceeding, including any appeal therefrom, alleging:
   1. an **enterprise security event**; or,
   2. a **privacy injury**.

   **Enterprise security event or privacy injury claim** does not include a **privacy regulation claim**.

P. **Extended reporting period** means the period after the cancellation or nonrenewal of claims-made coverage during which the **Insured** can report a **claim**.

Q. **Extortion loss** means:
   1. those reasonable expenses incurred by or on behalf of an **insured entity** or an **insured provider**, after obtaining the **Company's** pre-approval, to evaluate an **extortion threat** and to certify that the threat has ended; or,
   2. those funds paid by the **insured entity** or an **insured provider**, after obtaining the **Company's** pre-approval, to a party or parties that have made an **extortion threat**.

   However, **extortion loss** does not include any amounts for, arising out of or in connection with royalties, fees, deposits, commissions or charges for content, goods or services, **crisis management expense**, **fraud response expense**, **public relations expense**, **forensic and legal expense** or **data recovery expense**.

R. **Extortion threat** means any credible threat:
   1. to commit an attack against computer hardware, software and all components thereof linked together through a network of devices accessible through the internet or the **insured entity's** or the **insured provider's** intranet or connected with data storage or other peripheral devices and operated by and either owned by or leased to an **insured entity** or an **insured provider**; or,
   2. to disseminate **protected data** for which an **insured entity** or an **insured provider** is legally responsible,

   for the purpose of extorting funds from an **insured entity** or an **insured provider**. All **related extortion threats** will be deemed one **extortion threat**.

S. **First inception date** is the inception date of the earliest insurance policy the **Company** issued to an **insured entity** that provides coverage similar to that afforded under this Endorsement when there has been uninterrupted coverage by the **Company** for the **insured entity** from that earliest policy to this Endorsement.

T. **First named insured (FNI)** means the entity or person listed on the Declarations with administrative responsibilities for all **Insureds**. The **first named insured** is not an **Insured** under this Endorsement unless the **first named insured** also meets the definition of an **insured entity** or an **insured provider** under this Endorsement.

U. **Forensic and legal expense** means the reasonable cost of those services described in the subparagraphs below incurred by or on behalf of an **insured entity** or an **insured provider** in excess of the **insured entity's** or an **insured provider's** normal operating costs and with the prior written approval of the **Company**:
   1. a **system investigation**;
   2. services performed by a licensed legal professional retained by an **insured entity** or an **insured provider** for the purpose of:
      a. determining and advising the **Insured** on the applicability of notice requirements under any **privacy regulation**; or,
      b. determining and developing the form of notification to comply with applicable notice requirements under any **privacy regulation**.

   Provided, however, **forensic and legal expense** does not mean and does not include **crisis management expense**, **fraud response expense**, **public relations expense** or **data recovery expense**.

V. **Fraud response expense** means the reasonable cost of credit monitoring services and identity monitoring services or **identity theft insurance** for a one (1) year period to **qualified persons** incurred by or on behalf of an **insured entity** or an **insured provider** in excess of the **insured entity's** or the **insured provider's** normal operating costs and with the prior written approval of the **Company** for the purpose of mitigating financial loss resulting from disclosure of **protected personal information** due to the **enterprise security event** or **privacy injury**. Provided, however, **fraud response expense** does not mean and does not include **crisis management expense**, **public relations expense**, **forensic and legal expense** or **data recovery expense**.

W. **Identity theft insurance** means an insurance policy that pays benefits, for reasonable and necessary costs to restore an individual's identity not limited to travel costs, notary fees, and postage costs, lost wages, and legal fees and expenses associated with efforts.

X. **Individual insured** means, individually and collectively, a natural person performing services or duties within the scope of their employment for, or under direct control and supervision of, an **insured entity**, or an **insured provider**, and any agent or solo corporation as shown in the policy whose acts subject the **insured entity** or **insured provider** to vicarious liability, but only when a **claim** is made against the **insured entity** or **insured provider** or jointly against the **insured entity** or **insured provider** and the **individual insured**.

Y. **Insured entity** means any partnership, corporation or professional association named in the policy.

Z. **Insured provider** means any physician or dentist who is insured under a professional liability policy issued by the **Company** and who is also affiliated with an **insured entity**. The solo corporation and any employees of any **insured provider** shall share the limits of liability of such **insured provider**.

AA. **Malicious code** means any computer virus, Trojan horse, worm, or other code, script, or software program that is intentionally designed and released or inserted to access, damage, disable, or harm any part of a computer network or **protected data** on such network.

BB. **PCI-DSS assessments** means amounts owed by an **insured entity** or an **insured provider** under the terms of a **payment card industry agreement**, but only if such amounts are owed as indemnity obligations by the **insured entity** or the **insured provider** due to its actual or alleged non-compliance with the data security standards set forth in such **payment card industry**

**agreement**, and only if such **PCI-DSS assessments** arise out of a covered **enterprise security event** or **privacy injury**. **PCI-DSS assessments** do not include any charge backs, interchange fees, discount fees or service fees.

CC. **PCI-DSS claim** means a written demand for monetary or non-monetary relief, or a civil proceeding, arbitration or any alternative dispute resolution proceeding, including any appeal therefrom, brought by a credit/debit card company or credit/debit card processor seeking **PCI-DSS assessments**.

DD. **Payment card industry agreement** means rules adopted by a credit/debit card company, or credit/debit card processor delineating data security standards, data incident management protocols or data incident indemnity obligations.

EE. **Policy period** means the period of time specified in the Declarations, or any shorter period resulting from cancellation of this policy.

FF. **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:
1. smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, silica, mold or asbestos;
2. hazardous, toxic or radioactive matter or nuclear radiation;
3. waste, which includes material to be recycled, reconditioned or reclaimed; or,
4. any other **pollutant** as defined by applicable federal, state or local statutes, regulations, rulings, ordinances, or amendments thereto.

GG. **Privacy injury** means:
1. an actual or alleged breach of confidence, invasion, infringement, interference or violation of any rights to privacy committed by an **Insured**, including, but not limited to, breach of a person's right of publicity, false light, intrusion upon a person's seclusion, public disclosure of a person's privacy information, intrusion or misappropriation of a person's name or likeness for commercial gain;
2. accidental release, unauthorized disclosure, loss, theft or misappropriation of **protected data** in the care, custody or control of an **insured entity**, an **insured provider,** or a **service contractor**; or,
3. the **Insured's** failure to:
   a. timely disclose an incident described in 1. and 2. above in violation of a **privacy regulation**;
   b. comply with a **privacy regulation** with respect to control or use of **protected personal information**; or,
   c. comply with the requirements of the written standards published in the **insured entity's** or **insured provider's** privacy policy specifically:
      (1) prohibiting any **Insured** from disclosing, sharing, or selling **protected personal information**;
      (2) requiring the **Insured** to provide access to and correct inaccurate or incomplete **protected personal information**; or,
      (3) requiring compliance with procedures to prevent the theft or loss of **protected personal information**.

HH. **Privacy regulation** means any of the following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive personal information:
1. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

2. Health Information Technology for Economic and Clinical Health Act of 2009, and its related regulations;
3. Gramm-Leach-Bliley Act of 1999;
4. California Database Breach Act (SB1386);
5. Minnesota Plastic Card Security Act; or,
6. other state, federal and foreign identity theft and privacy protection statutes, rules and regulations similar to 1-5 above that require commercial entities that collect, process, or store personal information (as defined in such statutes, rules and regulations, as applicable) to post privacy policies, adopt specific privacy controls, or to notify natural persons and/or organizations in the event that such personal information has been comprised or potentially compromised.

II. **Privacy regulation claim** means a civil proceeding, civil investigation or request for information brought against any **Insured** for an actual or alleged violation of any **privacy regulation** by or on behalf of any federal, state, or local or foreign governmental agency including, but not limited to the Federal Trade Commission or Federal Communications Commission. **Privacy regulation claim** does not include an **enterprise security event or privacy injury claim**.

JJ. **Property damage** means physical injury to tangible property and any resulting loss or corruption of data or information, including all resulting loss of use of that property, data or information. **Property damage** does not mean the loss, corruption or destruction of data or information when the tangible property on which the data or information resides or resided is not physically injured.

KK. **Protected data** means **protected personal information** and **corporate information**.

LL. **Protected personal information** means, with respect to natural persons, any private, non-public information of any kind in an **insured entity's** or an **insured provider's** care, custody, or control, regardless of the nature or form of such information, including but not limited to the following, but only if such information allows an individual to be uniquely identified:
1. social security number;
2. medical service or healthcare data;
3. driver's license or state identification number;
4. equivalents of any of the information listed in 1. – 3. above;
5. account, credit card, or debit card number, alone or in combination with any information that permits access to an individual's financial information, including, but not limited to, security or access code or password; or,
6. other non-public information to the extent prescribed under **privacy regulations**.

However, **protected personal information** does not mean **corporate information** and does not mean publicly available information that is lawfully in the public domain or information available to the general public from government records.

MM. **Public relations expense** means the reasonable costs of those services incurred by or on behalf of an **insured entity** or an **insured provider** in excess of the **insured entity's** or the **insured provider's** normal operating costs and with the prior written approval of the **Company**, following an **enterprise security event** or **privacy injury**, including costs of:
1. hiring a public relations firm, law firm or crisis management firm for advertising or other communications services as a result of an **enterprise security event** or **privacy injury**, including training a spokesperson, providing talking points for media interaction, developing frequently asked questions responses, drafting or editing press releases, preparing of internal memos and website content; or,

2. placing advertisements, preparing website content, and other communications as recommended by such public relations firm, law firm or a crisis management firm to explain the nature of the **enterprise security event** or **privacy injury** and any corrective actions taken.

Provided, however, **public relations expense** does not mean and does not include **crisis management expense**, **fraud response expense**, **forensic and legal expense** or **data recovery expense**.

NN. **Qualified persons** means those natural living persons described in 1. or 2. below who are entitled to notification of an **enterprise security event** or **privacy injury** as described in paragraph 1. of the definition of **crisis management expense**, if such person elects to receive credit monitoring services or identity monitoring services or **identity theft insurance** within one hundred-eighty (180) days of receipt of such notification by the **Insured**:

1. as respects credit monitoring services and **identity theft insurance**, a person whose social security number, driver's license number, government issued identification number, or financial account, credit card, or debit card number has been improperly accessed, lost or stolen in addition to such person's name; or,
2. as respects identity monitoring services and **identity theft insurance**, a person whose medical service or healthcare information has been improperly accessed, lost or stolen in addition to such person's name.

OO. **Regulatory loss** means fines and penalties which an **insured entity** or an **insured provider** becomes legally obligated to pay as a result of a **privacy regulation claim** when permitted by applicable law. **Regulatory loss** also includes sums paid to a **consumer redress fund**.

PP. **Related claims** mean any **related enterprise security event or privacy injury claim** or a **related privacy regulation claim**.

QQ. **Related enterprise security event** means all **enterprise security events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

RR. **Related enterprise security event or privacy injury claim** means all **enterprise security event or privacy injury claims** arising out of a single **enterprise security event** or **privacy injury**, or arising out of **related enterprise security events or related privacy injuries**.

SS. **Related extortion threats** means all **extortion threats** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

TT. **Related privacy injury** means all **privacy injuries** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

UU. **Related privacy regulation claim** means all **privacy regulation claims** arising out of a single violation of a **privacy regulation** or arising out of **related violations.**

VV. **Related system disruption** means all **system disruptions** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

WW. **Related violation** means all violations of a **privacy regulation** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

XX. **Service contractor** means any organization to which an **insured entity** or an **insured provider** has given care, custody or control of, or access to, **protected personal information** pursuant to a written contract or agreement with the **insured entity** or the **insured provider**.

YY. **System disruption** means any act, whether intentional, malicious, reckless or negligent, by a party other than an **Insured** that occurs during the **policy period** and is carried out without an **Insured's** consent or knowledge, which act causes harm or damage to the data maintained by such **Insured**, including, but not limited to, interference with, or intrusion or incursion into, any **computer systems**, electronic communication systems, devices and telephony, including, but not limited to, an **insured entity's** or **insured provider's** electronic and computer databases, the Internet, intranet, extranet and related websites, facsimiles and electronic mail.

ZZ. **System investigation** means an investigation of the **computer system** to determine the cause of an **enterprise security event** and to identify and enroll or catalog the persons' names, addresses and **protected personal information** that may have been improperly accessed, lost or stolen for the purposes of providing notification that may be required.

*IX. ADDITIONAL CONDITIONS*

In addition to any other conditions stated in the policy that apply, and solely as respects the coverages added by this Endorsement, the following additional conditions will apply:

A. *Separation of Insureds.*

Any separation of insureds provision does not apply to the coverages added by this Endorsement.

B. *Data Recovery Expense Adjustment (First Party Coverages - C. Data Recovery Expense Coverage).*

1. In the event that data belonging to an **Insured** has been compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **system disruption**, such **Insured** shall, as soon as practicable after notifying the **Company** of the **system disruption** in accordance with this Endorsement's requirements, provide the **Company** with a sworn written statement detailing:
   a. the harm or damage known to have resulted from the **system disruption**;
   b. the circumstances under which the **Insured** first discovered the **system disruption**;
   c. the proposed plan for remediation and recovery of said data, including the name and identity of the professional or consultant proposed for carrying out the remediation and/or recovery;
   d. the proposed or estimated costs of the remediation and recovery; and,
   e. the proposed date and time for both commencing and completing such remediation and/or recovery.
2. No **data recovery expense** shall be incurred without the **Company's** prior written consent, and the **Company** shall not be responsible to pay for any **data recovery expense** incurred, in whole or in part, prior to the **Company's** written consent.

C. *Reporting of Claims and Events.*

1. *When a Claim is Made or Event Occurs*
   a. A **claim** will be deemed to be first made on the earlier of:
      (1) the date of any **Insured's** receipt of notice of such demand, request or investigation if such **claim** is a written demand, request for information, or investigation, or,

(2) the date of service upon or other receipt by an **Insured** of a complaint in any such proceeding, if such **claim** is a civil proceeding, arbitration or any alternative dispute resolution proceeding.

If **related claims** are subsequently made against the **Insured** and are reported to the **Company**, all such **related claims**, whenever made, will be considered a single **claim** and such **claim** will be deemed to have been made on the date the first of those **claims** was made against any **Insured**.

b. An **enterprise security event** or **privacy injury** will be deemed to occur when the **enterprise security event** or **privacy injury**, as applicable, becomes known to any **Insured**.

If **related enterprise security events** or **related privacy injuries** subsequently occur, and are reported to the **Company**, all **related enterprise security events** or **related privacy injuries** will be considered a single **enterprise security event** or **privacy injury**, as applicable, and will be deemed to have occurred on the date the first of those **enterprise security events**.

c. An **extortion threat** will be deemed to occur when the **extortion threat** becomes known to any **Insured**. If **related extortion threats** subsequently occur, and are reported to the **Company**, all such **related extortion threats** will be considered a single **extortion threat** and will be deemed to have occurred on the date the first of those **extortion threats** occurred.

d. A **system disruption** will be deemed to occur when the **system disruption** becomes known to any **Insured**. If **related system disruptions** subsequently occur, and are reported to the **Company**, all such **related system disruptions** will be considered a single **system disruption** and will be deemed to have occurred on the date the first of those **system disruptions** occurred.

2. *Reporting of Claims and Events*

It is a condition precedent to coverage under this Endorsement that:

a. as soon as any **Insured** becomes aware of any **claim**, the **Insured** must notify the **Company** in writing as soon as practicable, but in no event later than sixty (60) days after the end of the **policy period**;

b. as soon as any **Insured** becomes aware of any **enterprise security event**, **privacy injury**, **extortion threat** or **system disruption**, the **Insured** must immediately notify the **Company** in writing, but in no event later than sixty (60) days after the **enterprise security event**, **privacy injury**, **extortion threat** or **system disruption** occurs; and

The **Insured** is relieved of its obligation to notify the **Company** as set forth in paragraphs 1 and 2 above, if and only for so long as a "legal prohibition" prevents such notification. As used in this paragraph, "legal prohibition" means the written, dated and signed opinion of a qualified attorney who is not an **Insured** under this policy, that there exists a statute, law, regulation or court order that would prohibit such notification. Such opinion must specify the circumstances under which notification would be permissible. Immediately upon cessation of such "legal prohibition" the **Insured** must provide the required notice.

3. *Reporting of Circumstances*

a. Solely as respects Claims-Made Liability Coverages:

If, during the **policy period** or within thirty (30) days after the expiration of the **policy period**, an **Insured** gives the **Company** written notice of an act, error, omission, fact or circumstance, including an **enterprise security event**, **privacy injury**, or purported violation of a **privacy regulation** that occurred during the **policy period** and is reasonably likely to give rise to a **claim** with full details of:

(1) such an act, error, omission, fact or circumstance including any available information on persons or entities involved such act, error, omission, fact or circumstance;

(2) the nature and extent of the potential damages and the names of the potential claimants; and,
(3) the manner in which the **Insured** first became aware of such an act, error, omission, fact or circumstance,

then any such **claim** subsequently arising out of such act, error, omission, fact or circumstance will be deemed to have been made during the **policy period** in which notice was given. In order for coverage to apply to any such **claim**, the **Insured** must provide notice to the **Company** of such **claim** no later than thirty (30) days after such **claim** is first made against the **Insured**. No coverage will be provided for any **damages**, **regulatory loss**, or **claim expenses** incurred prior to the time such **claim** is made unless otherwise authorized in writing by the **Company**.

b. Solely as respects *Crisis Management and Fraud Prevention Expense Coverages*:
If, during the **policy period**, an **Insured** reports any act, error, omission, fact or circumstance under the preceding paragraph that gives rise to an **enterprise security event** or **privacy injury**, then the **enterprise security event** or **privacy injury**, as applicable, subsequently arising out of such fact, circumstance, act, error or omission will be deemed to have occurred during the **policy period**. In order for coverage to apply to any expenses arising out of such **enterprise security event** or **privacy injury**, the **Insured** must provide notice to the **Company** of such **enterprise security event** or **privacy injury**, as applicable, no later than thirty (30) days after such **enterprise security event** or **privacy injury** first occurs. No coverage will be provided for any **crisis management expense**, **fraud response expense**, **public relations expense**, or **forensic and legal expense** incurred prior to the time the **enterprise security event** or **privacy injury** occurs, unless otherwise authorized in writing by the **Company**.

D. *One-Year Extended Reporting Period.*

1. In the event of non-renewal or cancellation of the Claims-Made Professional Liability coverage attached to this policy, the **first named insured's** option to buy an **extended reporting period** shall apply to the coverage provided under this Endorsement, and shall be subject to the terms and conditions of the **extended reporting period** options of the Claims-Made Professional Liability coverage, except as noted herein.
2. If an **extended reporting period** is purchased by an **Insured**, coverage will be provided by the **Company** for up to one (1) year immediately following the termination of the policy, but only for **claims** first made during the **extended reporting period**, which are otherwise covered under the policy. If the **first named insured** does not renew this policy or the coverages in this Endorsement, or the **Company** cancels this Endorsement or the policy for reasons other than for non-payment of premium, the **Company** will grant the **Insured** a non-cancelable one-year **extended reporting period**. This **extended reporting period** terminates one (1) year after the end of the **policy period**.
3. A **claim** reported in writing to the **Company** during the **extended reporting period** will be deemed to have been made on the last day of the **policy period**. Any **claim** submitted during an **extended reporting period** will be subject to the terms and conditions of the policy applicable to such **claim** in effect on the last day of the **policy period**.
4. The limits of liability applicable to **claims** made during the **extended reporting period** are part of and not in addition to the limits of liability set forth in the Limits of Liability of this Endorsement. The **extended reporting period** does not reinstate or increase the applicable Limits.
5. No **extended reporting period** is available if the **first named insured** obtains another insurance policy that applies to such **claim** within sixty (60) days immediately following the end of the **policy period**.
6. **Claims** made during an **extended reporting period** must be reported in accordance with the section entitled Reporting of Claims and Events.

7. In the event of non-renewal or cancellation of Occurrence Professional Liability coverage under this policy, the **Company** agrees to extend the coverage provided under this Endorsement for a period of up to one (1) year immediately following the termination of the Occurrence Professional Liability coverage, but only for **claims** first made during the **extended reporting period**, which arise out of acts or errors that actually or allegedly take place prior to the non-renewal or cancellation of the Occurrence Professional Liability coverage.

E. *Subrogation.*
The **Company** shall be subrogated to the rights of any **Insured** to the extent of any payments made, or as allowed by law. An **Insured** shall do nothing to prejudice those rights. At the **Company's** request, an **Insured** shall bring suit or transfer those rights to the **Company**. **Insureds** shall also assist in enforcing the **Company's** rights under this Endorsement and the policy.

F. *Other Insurance.*
This insurance shall apply in excess of any other valid and collectible insurance available to any **Insured**, including any retention or deductible portion thereof. In the event that a **claim** attaches to more than one Cyber Liability and Data Breach Coverage Endorsement issued by the **Company**, all amounts shall be applied first to the Endorsement attached to the Partnership-Corporation policy. Additionally, the **Company** has sole discretion to allocate **claims** paid.

All other terms and conditions of the policy remain unchanged.

**************************************************************************

PITTSBURGH GASTROENTEROLOGY ASSOCIATES
LTD
2589 BOYCE PLAZA RD STE 5
PITTSBURGH PA 15241-4907

C22756
RN

**THIS IS NOT A BILL - INVOICING UNDER SEPARATE COVER**